Lincoln J.
delivered the opinion of the Court. After a verdict for the plaintiff in this action, with the assessment of damages by the jury in the sum of 1000 dollars, the defendant moves the Court to arrest the judgment, because the publication complained of in the declaration of the plaintiff’s writ is not libellous in itself, or in connexion with the circumstances under which it was made. And if the judgment may not be arrested for this cause, he moves that the verdict may be set aside and a new trial granted, because the damages assessed by the jury are excessive.
Is the publication libellous ? The law holds that to be a libel, which in writing, or printing, or by signs or pictures, maliciously reproaches the memory of the dead, ór defames the reputation of the living, and tends to excite towards them public contempt or hatred. In Com. Dig. tit. Libel, A, a libel is defined to be, “ a contumely, or reproach, published to the defamation of the government, of a magistrate, or of a private person.” But the most clear and precise definition of a libel, as applicable to personal actions, is contained in the opinion of the late Chief Justice Parsons, in the case of Commonwealth v. Clap, 4 Mass. R. 168. “ It is,” says he, “ a malicious publication, expressed either in printing or writing, or by signs or pictures, tending either to blacken the memory of one dead, or the reputation of one who is alive, and expose him to public hatred, contempt or ridicule.” To the correctness of this definition no objection can now be urged. It rests upon the authority of an unbroken series of decisions for ages, and its application to the condition of civilized society, and to individuals in social life, has the sanction of reason and the approval of every reflecting and intelligent *123 mind. It is only necessary then to examine and decide upon the merits of the publication of the defendant by the legal rule thus established.
The expressions complained of, stripped of the technical dress in which they are displayed in the writ, are the following.— “I am extremely loath” &c., (as before.) This language is plain and intelligible. It contains a direct charge of unworthy and base conduct, and with whatever of reluctance motives may have been imputed, the plaintiff is distinctly charged with being influenced by improper ones. His conduct is said to merit the reprobation of every honest and honorable man. The suggestion that this charge is explained by reference to the subject matter of the remark, cannot affect its injurious character. If the plaintiff had been the innocent and unconscious instrument of aiding the false accusations of others, if he had merely furnished materials which others had abused to the purposes of calumny, his conduct could not, in the strong language of the defendant, “have merited the reprobation of every man having a particle of virtue or honor in his whole composition.” But the defendant does not, in fact, exonerate the plaintiff from improper motives. He merely prefaces the imputation with the expression that he is hath to make it, and as if to give more effect to the bitterness of his reproaches, feeling this reluctance, he presents the alternative, alike injurious in either branch of it, of considering the motives of the plaintiff as unworthy of an honest man, or his conduct as deserving the reprobation of every man of virtue and honor. It cannot be permitted to the defendant to deny the obvious construction of his language. He could have designed nothing other by this part of his publication, than to produce a public impression unfavorable to the character of the plaintiff. If his words import any thing, it must be that the plaintiff deserved public reproach for the indulgence of improper motives, in regard to false accusations which had been made against the defendant, or for unworthy conduct in furnishing materials for the foul work of calumny. The plaintiff is held up to public hatred and contempt, and in the very terms which constitute the essence of a libel, is exposed to *124 the reprobation of the virtuous and the honorable. In the case of Thorley v. Lord Kerry, decided in the Exchequer Chamber upon a writ of error, in which the judgment of the court was pronounced by Mansfield C. J., as reported in a note to Holt’s Law of Libel, (Amer. ed.) 229, language much less injurious was held to be libellous; and although that learned judge expressed his regret, that an action could be sustained for words written, which would not be actionable if spoken, yet he recognised the rule of law as having been settled for at least a century backwards, that a publication which contains an imputation calculated to vilify a man and bring him into hatred, contempt, or ridicule, was a libel.[1]
But the counsel for the defendant contends, that if the language of the publication, considered by itself, may be adjudged libellous, yet the occasion of it and the circumstances connected with its appearance, render it justifiable or excusable. In deciding upon the motion in arrest of judgment, the Court could not, by the strict rules of legal proceedings, look beyond the record. The evidence at the trial is not reported and probably was not expected to be. But by an agreement at the bar, we have had before us the hook which contains the publication complained of as libellous, and in our discussions the defendant has had the full benefit of a candid consideration of all the circumstances and explanations which his own representation presents. Whatever was pleaded has been repeated and earnestly pressed in the argument. It must be remembered, however, that the justification which was attempted by the defendant .has been negatived by the verdict of the jury, and if it were now competent to insist upon the circumstances *125 displayed in the pleadings as an inducement to the publication, it could not avail to arrest the judgment. The fact that the defendant had himself been the object of calumny, and that his character had been subjected to the opprobrium of a public investigation, is no answer to the plaintiff’s complaint. Had the tribunal, before which his conduct was arraigned, been clothed with the most ample judicial powers, he would have been authorized only to make a true representation of their proceedings, with just and fair comments upon the testimony of the witnesses. His reputation required nothing more. Indeed that had previously received the most satisfactory vindication in a full and prompt acquittal. Mr. Justice Spencer, in delivering the opinion of the court in Thomas v. Croswell, 7 Johns. R. 272, says, (< There is not a dictum to be met with in the books, that a man, under the pretence of publishing the proceedings of a court of justice, may discolor and garble the proceedings by his own comments and constructions, so as to effect the purpose of aspersing the characters of those concerned.”[2]
Nor is the position, that the publication is within the spirit of the rule, which excuses a party who has a deep interest in a subject of inquiry and takes reasonable measures to obtain information, better sustained. Here no information was to be obtained. The ingenious suggestion, that in a country, where .nfluence and usefulness depend upon reputation, it is as important to communicate information upon subjects of deep personal concern as to obtain it, is more specious than sound, in its application to this case. The information here communicated had no tendency to restore to the defendant public confidence, or to justify his character or conduct. It is not pretended that the plaintiff was his accuser, and the finding of the jury discharges him of intentional error or of injustice to the character of the defendant. It is difficult to understand, from the hearing of the cause, in what manner the defendant was to be benefited by his remarks upon the witness.
Another objection under this head of the case remains to be considered. It is said that the matter of the publication is not *126 libellous, because it is but an inference drawn from admitted facts. It may well be inquired, what facts are admitted. The plaintiff has not acknowledged, that he furnished materials to fan the flame of calumny. He has neither admitted nor denied upon the records of this case, that he knew there was calumny or false 'accusations in circulation against the defendant. This knowledge, and motives and conduct in relation to it, were imputed to him by the special plea put in by the defendant, but they were repelled in the replication, and his entire exculpation is shown by the verdict. We find nothing therefore in either of the points urged by the counsel for the defendant, to sustain the motion in arrest of judgment.
But an objection to the verdict, for the assessment of excessive damages, has been most strenuously urged. It has been said in argument, that the publication was of the mildest character for which the law allows an action, and was libellous only in that it was reproachful; that no crime was imputed to the plaintiff; that there was no evidence of express malice on the part of the defendant; and that the large amount of damages which was assessed, must have resulted from minds inflamed by public prejudice. If indeed it were apparent that the latter suggestion was well founded, the Court would not hesitate to interpose the discretion which might legally be exercised in such a case, to save the rights of the party, and to rescue the administration of justice from the reproach of being made subservient to the gratification of passion. But we think that the verdict of the jury deserves not this censure. Whatever may be the opinion of the Court upon the amount of damages proper to be assessed under the peculiar circumstances of this case, they cannot perceive any cause to impeach the motives or conduct of the jury. It is a matter referred by the law exclusively to their judgment. It is so appropriately within their province, that the law does not justify the interference of the Court upon the subject, except it be to protect the party against the hardly possible existence of violence or corruption. In the case of Gilbert v. Burtenshaw, Cowp 230, Lord Mansfield remarks, that he should be “ sorry to say, that in cases of personal torts, no new trial should ever be granted for damages, which manifestly show the jury to have *127 been actuated by passion, partiality or prejudice. But it is not to be done without very strong grounds indeed ; and such as carry internal evidence of intemperance in the minds of the jury ; and unless it appears, that the damages were flagrantly outrageous and extravagant, it is difficult for the court to draw the line.” In Tillotson v. Cheetham, 2 Johns. R. 74, where the jury assessed damages in the sum of 1400 dollars for a libellous publication, Kent C. J. said, “ We cannot interfere on account of the damages. A case must be very gross and the recovery enormous, to justify our interposition on a mere question of damages, in an action of slander. We have no standard by which we can measure the just amount, and ascertain the excess. It is a matter resting in the sound discretion of the jury.” Chief Justice Parsons, in delivering the opinion of the Court in the case of Coffin v. Coffin, 4 Mass. R. 41, observed, that a verdict may be set aside for excessive damages, when “ from the exorbitancy of them the court must conclude that the jury acted from passion, partiality or corruption, causes which naturally produce error and injustice.” But in that case, which was an action for slander, the court refused to set aside a verdict for 1500 dollars. In Southwick v. Stevens, 10 Johns. R. 443, for a libel, where in the trial of the cause Yates J. had specially instructed the jury, that in his opinion, they ought to find very trifling or nominal damages for the plaintiff, and the verdict was for 650 dollars, upon a motion to set aside the verdict because the damages were excessive, the court say, that “ it was for the jury to determine how far the ridicule of the plaintiff was malevolent, and calculated to injure his feelings, and prejudice him in the eyes of the public ; ” and they refused the motion. This case bears strongly upon the whole ground assumed by the defendant’s counsel in the argument. The action was between two printers of newspapers, and the publication of the defendant was by way of recrimination for an attack previously made upon him in the paper of the plaintiff. The libel represented that the plaintiff was crazy, that he had been put into a strait jacket, had his head shaved and was confined to bread and water, and in proof of his insanity referred to the matter and character of the Albany *128 Register, the plaintiff’s paper. No crime was imputed, but the whole tenor of the publication was obviously ironical and designed to throw ridicule upon the plaintiff, and it had been greatly provoked by his previous publications. The same rule which is laid down in the cases above cited, is also to be found in the opinion of the court delivered by Kent C. J. in the case of Coleman v. Southwick, 9 Johns. R. 45, and the numerous cases there cited, to which the chief justice has added the opinion of Lord Kenyon in an action on the case for criminal conversation, (Duberly v. Gunning, 4 T. R. 655,) where the jury gave £5000, and his Lordship said that he should have been satisfied even if nominal damages had been given, yet he knew of no case that would authorize the court to interfere, and he said, he had not courage enough to make the first precedent. In all the cases referred to, the assessment of the damages may justly be regarded as more extraordinary, than will be pretended is the amount returned in the case at bar. Here were certainly some circumstances, of which the Court will take notice, and upon the proof of which the jury may well be justified in their finding. It must be seen that the defendant is a man of consequence in society, that he is a public and confidential agent of the government, one whose situation and character will attach weight to his opinions, and give influence and effect to his representations. The plaintiff’s occupation in business is referred to in the writ and pleadings, and the great injury to which he was exposed by the excitement of public prejudice against him, is fairly to be inferred as a necessary consequence of the publication of the defendant. A plea of justification deliberately made and placed upon the public records, and which the jury found was unwarranted by the truth of the matter therein alleged, is to be regarded as a deep aggravation of the slander; and without regard to extraneous circumstances, of which the Court cannot now be judicially informed, we are constrained to the conclusion, that if the damages assessed are not in exact conformity with the rights of the plaintiff, yet they are not, in the language of the books, so flagrantly outrageous as manifestly to show the jury to have been actuated by passion, partiality or prejudice. Indeed we *129 feel bound to say, that the objection to the verdict, on this ground, is altogether unsupported.* [1]
The Court therefore overrule the motion for a new trial, as well as the motion in arrest of judgment, and direct that judgment be entered for the plaintiff upon the verdict.

 This distinction between written and verbal slander has not the least foundation in principle, although it seems to be firmly established by decisions, both in England and in this country. Many, of the cases to this purpose will be found collected in Bell v. Stone, 1 Bos. & Pul. 331 ; Austin v. Culpepper, Skin. 124 ; S. C. 2 Show. 313 ; Villers v. Monsley, 2 Wils. 403 ; Ring v. Lake, Hardr. 470 ; see also Harman v. Delany, Fitzgib. 253, and cases there collected; Weaver v. Lloyd, 2 Barn. & Cressw. 678 ; Van Ness v. Hamilton, 19 Johns. R. 367 ; Stow v. Converse, 3 Conn. R. 341, 342 ; M‘Corkle v. Binns, 5 Binn. 349 ; Dole v. Lyon, 10 Johns. R. 449, per Kent C. J.; Starkie on Slander, (Amer. ed.) 98. It may still be well worthy of inquiry, whether causes of action which come within the same general reasons in principle, should not also be governed by the same general rules in practice.

 Roberts v. Brown, 10 Bingh. 519 ; Commonwealth v. Blanding, 3 Pick. 304 ; State v. Lehre, 2 Const. Rep. 809 ; Saunders v. Mills, 6 Bingh. 213.

 Where the amount of damages is matter of opinion merely, the fact that the jury have fixed them at a greater or less sum than any of the witnesses, is not a ground for a new trial. Hopkins v. Myers, 1 Harper’s (S. C.) R. 56 ; Brewer v. Tyringham, 12 Pick 547. See Harvey v. Huggins, 2 Bailey, 252 ; Park v. Hopkins, id. 408. But where the verdict giving excessive damages is founded on a mistake in law, it may furnish ground for a new trial. See Green v. Speakman, 8 J. B. Moore, 339. So where the jury have proceeded on an incorrect principle in assessing damages. Pierce v. Woodward, 6 Pick. 206. See Deems v. Quarrier, 3 Randolph’s R. 475; Mahoney v. Frasi, 1 Cromp. & Meeson, 325. So where the damages are enormous and disproportionate. Price v. Severn, 7 Bingh. 316; or too small, Rixey v. Ward, 3 Randolph’s R. 52; M'Kane v. Bonner, 1 Bailey, 113; Paytavin v. Winter, 4 Miller’s (Louisiana) R. 46. But a new trial will not be granted, though the jury have assessed greater damages than are laid in the declaration, where the defendant, without showing any good reason for it, was absent at the tria.. Masters v. Barnwell, 7 Bingh. 110, n. (a). See also Bodwell v. Osgood 3 Pick. 379; Shute v. Barrett, 7 Pick. 82; Douglass v. Tousey, 2 Wendell, 352; Reed v. Davis, 4 Pick. 216; Howe’s Practice, 507, 508, Coleman v. Southwick, 9 Johns. R. 35; Moody v. Baker, 5 Cowen, 351; Neal v. Lewis, 2 Bay, 204; Davis v. Davis, 2 Nott & M‘Cord, 81; Riley v. Nugent, 1 Marsh. 431; Sheppard v. Lark, 2 Bailey, 576